IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                                  Case No. 3:17cr148

KENYATTA D. OSAYANDE,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Kenyatta Osayande's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 29.) The United States responded in opposition (the "Opposition") and Osayande replied (the "Reply"). (ECF Nos. 36, 38.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release without prejudice.

### I. Background

A.  **The Present Case**

On December 19, 2017, Kenyatta Osayande pled guilty to possession with intent to distribute 100 grams or more of heroin (Count One) and possession of a firearm in furtherance of a drug trafficking crime (Count Three). (ECF No. 12, at 1.) The Presentence Report ("PSR") describes the conduct underlying Osayande's offenses. In June 2017, a Richmond Police Detective received information from a cooperating source describing an individual known as "Big Chris" who sold heroin out of a tan minivan in the Chamberlayne Avenue area of Richmond, Virginia. (ECF No. 34 ¶ 6.) On July 6, 2017, the detective observed a tan minivan in

that same area driven by a man who fit the source's description and observed activity he recognized as "being consistent with drug distribution." (ECF No. 34 ¶ 6.) On July 8, 2017, Richmond Police officers saw the minivan in the Chamberlayne Avenue area once again and decided to approach the vehicle. The officers "observed furtive movements by the front passenger," and recognized Osayande "as the same individual driving the minivan on July 6, 2017," who they learned had previously changed his name from "Christopher Howell." (ECF No. 34 ¶ 6.) The officers then decided to conduct a protective sweep of the minivan followed by a search of the vehicle where they discovered "approximately 5 ounces of heroin, 0.5 ounce of crack cocaine, a loaded revolver, and $32,675 in U.S. currency" inside a bookbag on the floor of the minivan, and recovered "an additional 2.5 grams of heroin from the visor area of the vehicle." (ECF No. 34 ¶ 6.) Then, when Osayande was being read his *Miranda* Rights during his arrest, he "repeatedly stated" that the officer could have half of the money in his bag—$15,000 cash—if the officer "let [him] go free." (ECF No. 34 ¶ 6.)

Prior to sentencing, the probation officer prepared the PSR for Osayande, summarizing his criminal history. Osayande fell into criminal history category I based on his prior convictions, most of which did not count toward the calculation due to the age of the offenses. (ECF No. 34 ¶ 36.) His prior convictions included resisting arrest; property damage; concealing a weapon; obstruction of justice; possession of cocaine; possession of cocaine with intent to distribute; possession of cocaine simultaneously with a firearm; assault and battery; and driving under revocation or suspension. (ECF No. 34 ¶¶ 26–34.) Pursuant to the Sentencing Guidelines, Osayande's Total Offense Level of 33 and Criminal History Category of I resulted in an advisory Sentencing Guidelines range of 135–168 months of imprisonment for Count One and 60 months, consecutive, for Count Three. (ECF No. 34, at 19.)

The PSR also provided information on Osayande's physical condition at the time of sentencing, noticing his weight of 335 pounds, a history of diabetes mellitus, asthma, hypertension, and high cholesterol, as well as a reflected record of chest pains, angina, and vertigo. (ECF No. 34 ¶¶ 65–67.) The PSR also noted that Osayande had suffered two mild strokes at age 24, and later a cocaine induced heart attack and gout. (ECF No. 34 ¶ 65.) The PSR further mentioned a history of mental and emotional health issues including grief, depression, and substance abuse issues, most notably including a report from Osayande that he had used cocaine hydrochloride "daily from September 2016 until July 8, 2017," the day of his arrest. (ECF No. 34 ¶¶ 68–77.)

On March 28, 2018, this Court sentenced Osayande to 195 months' imprisonment followed by five years of supervised release. (ECF No. 23, at 2.) On November 5, 2020, the Court reduced Osayande's term of imprisonment to 117 months. (ECF No. 28, at 1.) The Bureau of Prisons ("BOP") states that Osayande will be released on November 13, 2025. Bureau of Prisons, *Fed. Inmate Locator* (last visited July 12, 2022), *available at* https://bit.ly/3DvBEVC.

### B.   Osayande Moves for Compassionate Release

On October 8, 2020, Osayande submitted a request for compassionate release to the Warden of his previous facility, FCI Fort Dix. (ECF No. 29, at 10.) On February 10, 2021, Osayande filed the instant Motion for Compassionate Release. (ECF No. 29.) In the Motion, Osayande broadly describes the current public health crisis in BOP facilities caused by COVID-19. (ECF No. 29, at 7–10.) Osayande explains that he contracted COVID-19 at Fort Dix in "late December 2020 and was treated for severe symptoms for 8 days in early January 2021." (ECF No. 29, at 4.) Osayande states that he was "in the institution in very serious condition in late

3

December for a full week before he was admitted to the hospital." (ECF No. 29, at 4.) Osayande claims he "nearly died" as a result of the experience. (ECF No. 29, at 6.)

Osayande contends that his "obesity and multiple heart-related problems combine to create an overall increased risk of developing severe illness or dying from COVID-19," if he were to contract the virus again. (ECF No. 29, at 6.) Osayande further avers that "dire circumstances" and "inhumane conditions in FCI Fort Dix where the virus rampages" exist when urging the Court to grant his Motion. (ECF No. 29, at 10.) Osayande states Fort Dix is the "second most infected prison in the United States," leaving him even more susceptible to contracting COVID-19 again. (ECF No. 29, at 10.) Lastly, Osayande claims that his "story calls out for mercy," citing a "tragic personal history and demonstrated promise for a positive future." (ECF No. 29, at 13.) Osayande states he "does not pose a danger to the safety of any other person or to the community," and his BOP records reflect that he "shows good signs of not being a risk upon release." (ECF No. 29, at 18.) Osayande reported "taking entrepreneurship and financial management classes, making good progress on achieving his GED, and completing self-improvement programs." (ECF No. 29, at 20.) At the time he filed the Motion, Osayande stated that he would reside with his mother upon his release. (ECF No. 29, at 21.) However, as noted in the Reply, "his mother died on March 3, 2021," so the details of his current release plan "are not known at this time." (ECF No. 38, at 1.)

The United States opposes Osayande's request for compassionate release, acknowledging that his "health problems do [provide] 'extraordinary and compelling' reasons for release" and "would ordinarily make him particularly susceptible to complications of COVID-19," but arguing that Osayande "has significantly reduced such susceptibility by losing a large amount of weight," and managing his diabetes with medication. (ECF No. 36, at 8.) The United States

4

further contends that "he has failed to follow medical recommendations to improve" his hypertension and cardiac conditions. (ECF No. 36, at 8.) Furthermore, the United States argues that Osayande "has not established a 'particularized risk of contracting the disease at his prison facility," as required by § 3582(c)(1)(A), stating that conditions at FCI Fort Dix have been steadily improving since Osayande's previous COVID-19 infection, and questioning the security and safety of his plans regarding his living arrangements should he be released.[1] (ECF No. 36, at 16, 17.) Lastly, the United States contends that the "seriousness of the defendant's offense weighs heavily against release," (ECF No. 36, at 19), noting concern about the increased risk to the public should he be released early, directing to Osayande's "efforts to hasten public corruption in local law enforcement." (ECF No. 36, at 20–21.) The United States points to the fact that, as of March 2, 2021, Osayande had "only served 43% of his 117 month sentence, such that compassionate release would not provide adequate deterrence and would result in the defendant receiving a disparate sentence relative to similarly situated defendants." (ECF No. 36, at 21.)

C. **Osayande Incurs a Disciplinary Infraction**

On June 22, 2021, Osayande was transferred temporarily from FCI Fort Dix to FDC Philadelphia, then ultimately to FCI Petersburg. (ECF No. 40-2, at 1.) On October 13, 2021,

---

[1] As of July 12, 2022, the parties have not supplemented the record regarding the COVID-19 conditions at FCI Petersburg or Cumberland FCI. At present, the Bureau of Prisons website notes eight confirmed active COVID-19 cases at FCI Petersburg Medium (seven inmates and one staff member), four confirmed active cases at FCI Petersburg Low (three inmates and one staff member), and zero confirmed active cases at Cumberland FCI. *See* Bureau of Prisons, *COVID-19* (last visited July 12, 2022), *available at* https://bit.ly/31LOvWk. As of July 12, 2022, 1,645 inmates resided at FCI Petersberg Medium, 652 inmates resides at FCI Petersberg Low, and 1,286 inmates resided at Cumberland FCI. Bureau of Prisons, *FCI Petersberg Medium* (last visited July 12, 2022), *available at* https://bit.ly/3PnqfNP; Bureau of Prisons, *FCI Petersberg Low* (last visited July 12, 2022), *available at* https://bit.ly/3IA28cy; Bureau of Prisons, *FCI Cumberland* (last visited July 12, 2022), *available at* https://bit.ly/2MqPfIF.

after the parties had submitted their briefs addressing the Motion, Osayande was "involved in a disciplinary incident" at FCI Petersburg. (ECF No. 40, at 1; *see* ECF No. 40-3, at 1.) Specifically, while Petersburg Correctional Officer Crutchfield conducted count, she "observed [Osayande] in the 2nd floor TV room." (ECF No. 40-3, at 1.) Officer Crutchfield "asked him why he was in the TV room when Unit Secretary Grandison had just instructed him to leave the TV room and report to his bed area a few minutes prior." (ECF No. 40-3, at 1.) Officer Crutchfield then left and conducted count. (ECF No. 40-3, at 1.) "At the conclusion of the count, . . . Osayande abruptly entered [Officer Crutchfield's] office[,] yelling about [her] cursing at him." (ECF No. 40-3, at 1.) Officer Crutchfield denied Osayande's characterization of the interaction when she asked him to leave the TV room. (ECF No. 40-3, at 1.) Osayande continued, stating that if he "did something wrong," Officer Crutchfield should "write [him] up," but he maintained that Officer Crutchfield could not "talk to [him] like that." (ECF No. 40-3, at 1.) Because Officer Crutchfield interpreted Osayande's demeanor as "hostile," she "immediately instructed him to leave [her] office[,] but he failed to do so." (ECF No. 40-3, at 1.) Officer Crutchfield asked Osayande to leave "several additional times," but Osayande refused to comply. (ECF No. 40-3, at 1.) Eventually, "[a]dditional staff heard the commotion and then interjected[,] escorting [Osayande] to the front lobby." (ECF No. 40-3, at 1.)

As a result of the incident, Osayande "was placed in the Special Housing Unit [of FCI Petersburg] pending an incident report." (ECF No. 40-5, at 1.) "Upon completion of an investigation, it was determined that . . . Osayande c[ould] not safely return to FCC-Petersburg-Camp"[2] because he "became increasingly aggressive and hostile with staff at the camp while

---

[2] "Camp" appears to refer to the "minimum security satellite camp" that is "adjacent" to the FCI Petersburg Low unit. *See* Bureau of Prisons, *FCI Petersburg Low* (last visited July 12, 2022), *available at* https://bit.ly/3NKceJ3.

6

attempting to challenge staff's enforcement of policy." (ECF No. 40-5, at 1.) "To prevent further retaliation and in the interest of security," the officials handling the matter "recommend[ed] that . . . Osayande be transferred to any appropriate Low facility commensurate with his security and custody needs and a Greater Security Management Variable be applied." (ECF No. 40-5, at 1.) FCI Petersburg officials also noted that Osayande's "institutional adjustment is considered poor based on his interactions with staff [and] inmates, his disciplinary history, and [his] lack of programming." (ECF No. 40-5, at 1.) He was "considered a management concern." (ECF No. 40-5, at 1.)

Osayande now resides at Cumberland FCI, a medium-security prison. As of July 12, 2022, Cumberland has vaccinated 250 staff members and 1,181 inmates. *See* Bureau of Prisons, *COVID-19* (last visited July 12, 2022), *available at* https://bit.ly/31LOvWk.[3]

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[4] Prior to the First Step Act in 2018, the BOP had the sole authority to petition

---

[3] The Court notes that 1,181 inmates appears to constitute a substantially high percentage of the prisoners who reside at Cumberland FCI. *See* Bureau of Prisons, *Cumberland FCI* (last visited July 12, 2022), *available at* https://bit.ly/2MqPfIF (noting that at Cumberland, 1,129 inmates reside at the FCI and 157 inmates reside at the adjacent minimum security satellite camp).

[4] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

7

the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's

---

of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
  (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

**B.    Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if

9

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[5]

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and

---

[5] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>     (1) (A) extraordinary and compelling reasons warrant the reduction; or
>     (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>     (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and[,]
>     (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court. *United States v. Booker*, 543 U.S. 220, 233 (2005).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (citations omitted).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III. Analysis

After due consideration, the Court will deny the Motion. The Court first determines that Osayande has sufficiently exhausted his administrative remedies. Pursuant to 18 U.S.C. § 3582(c)(1)(A), Osayande filed his Motion for Compassionate Release with the Court after "the

lapse of thirty days from the receipt" of his request by the Warden at FCI Fort Dix. (ECF No. 29, at 10.)

Turning to the second factor, Osayande's health problems coupled with the ongoing COVID-19 pandemic present an "extraordinary and compelling reason" to consider his request for release. 18 U.S.C. § 3582(c)(1)(A)(i). Courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." *Feiling*, 2020 WL 1821457, at *7 (emphasis added).

As acknowledged by the United States in the Opposition, Osayande's health conditions, including his history of diabetes, obesity, hypertension, heart problems, and asthma make Osayande particularly susceptible to contracting COVID-19. (ECF No. 36, at 1.) Osayande has, in fact, already contracted and—thankfully—recovered from COVID-19. But, while battling COVID-19 at FCI Fort Dix, Osayande spent eight days in the hospital requiring oxygen and intensive treatment and coming close to death. (ECF No. 38, at 2.) The record demonstrates that Osayande faces serious and grave risks from the COVID-19 virus. The Court further acknowledges that prisons in general are more susceptible to COVID-19 infections and outbreaks due to the inmates' close quarters and living conditions. Although "many courts have ruled . . . that the highly effective available vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason required to further consider compassionate release,'" *United States v. Landry*, No. 2:16cr171, 2021 WL 5493497, at *5 (E.D. Va. Nov. 22, 2021) (quoting *United States v. Gregory*, No. cr13-0334, 2021 WL 1909605, at *4 (D. Md. May 12, 2021) (collecting cases)), the Court notes that COVID-19 remains a significant health risk even in the era of wide vaccine availability in light of newly

emergent variants which appear to limit vaccine efficacy to some degree. *See* Pfizer & BioNTech, *Pfizer & BioNTech Provide Update on Omicron Variant* (Dec. 8, 2021), *available at* https://bit.ly/3Dzs7Nr.

Since the filing of his Motion, Osayande has been moved from FCI Fort Dix to FCI Petersburg, and later from FCI Petersburg to Cumberland FCI—so the Court will not consider Osayande's arguments regarding the conditions at Fort Dix in this analysis. The record does not make clear Osayande's vaccine status, but the BOP website shows that many staff and inmates who reside at Cumberland FCI are vaccinated. And although there are currently no active COVID cases amongst inmates at Cumberland, *see* Bureau of Prisons, *COVID-19* (last visited July 12, 2022), *available at* https://bit.ly/31LOvWk, Osayande has moved between facilities relatively frequently as of late. He may, therefore, be more likely than other inmates to be re-housed at a facility with higher present infection rates like FCI Petersburg. *See id.* Thus, Osayande establishes that he has a "particularized susceptibility" to COVID-19 because of his underlying medical conditions, and that he faces a "particularized risk" of contracting the virus should the contagion continue to spread either in Cumberland FCI or another facility. *Feiling*, 2020 WL 1821457 at *7.

Although Osayande presents extraordinary and compelling reasons for compassionate release consideration, the Court finds that the 18 U.S.C. § 3553(a) sentencing factors do not weigh in favor of release. Upon review, Osayande's prior criminal history and his underlying convictions demonstrate that he presents a threat to the public due to his disregard for the law and that conditions of release will not assure the safety of the community. Even though they did not garner criminal history points for the purposes of sentencing, Osayande's repeated violent offenses including assault and battery and multiple weapons-related offenses reflect that he

13

presents a danger both to himself and the community. (ECF No. 34 ¶¶ 26, 28–30, 33.) Moreover, Osayande's attempt to bribe his arresting officer to avoid his current convictions as well as the fact that he committed the instant crimes at the advanced age of 47 show his continued disregard for the law. And finally, Osayande's recent disciplinary infraction—involving "aggressive[ness] and hostil[ity]" towards a correctional officer—further weighs against release. (ECF No. 40-5, at 1.)

Turning to other § 3553(a) factors, the Court notes that Osayande will not be released for about another three years. *See United States v. Deville*, No. 15-293, 2021 WL 4243318, at *4 (E.D. La. Sept. 17, 2021) (denying compassionate release in part because "the grant of compassionate release would effectively reduce [the Defendant's] sentence from over seven years to under four years"). Additionally, upon release, Osayande will begin to serve a five-year supervised release term for his offense. Thus, his previous criminal and disciplinary history suggests that the Court should consider public safety and whether his sentence promotes respect for the law. The Court finds that the seriousness of his offense, the need to protect the public, and the need to promote respect for the law outweigh immediate release.

Osayande originally argued that his Motion should be granted because he has a clean disciplinary record[6] and has engaged in BOP-sponsored educational and vocational opportunities. (ECF No. 29, at 20.) The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Martin*, 916 F.3d at 397–98. Osayande displays some progress in his rehabilitation and this Court commends his efforts. However, Congress has made clear that "[r]ehabilitation of the

---

[6] Osayande filed the instant Motion before incurring his disciplinary infraction.

defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). While the Court acknowledges Osayande's participation in GED and other educational programs during his time in prison—and strongly commends him on those efforts—these measures do not warrant his early release in light of the seriousness of his convictions, the nature of his recent disciplinary infraction, and the remaining time on his sentence.

## IV. Conclusion

For the reasons explained above, the Court will DENY the Motion without prejudice. (ECF No. 29.)

An appropriate Order shall issue.

Date: 7-14-2022
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

15